1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES CRANSTON,

11              Plaintiff,              No. CIV S-04-1981 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.              ORDER

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

20   plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

21   for summary judgment.

22   /////

23   /////

24   /////

25   /////

26   /////

1

1   I.  Factual and Procedural Background

2          In a decision dated February 10, 2004, the ALJ determined plaintiff was not

3   disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals

4   Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of

5   degenerative disc disease and intention tremors, as well as non-severe impairments of

6   GERD/PUD, hypertension, hyperlipidemia, seasonal allergies, nicotine addiction, and kidney

7   stones, but that these impairments do not meet or medically equal a listed impairment; plaintiff's

8   subjective complaints are not totally credible; plaintiff has the residual functional capacity to

9   perform light work with minimal postural limitations, specifically, plaintiff can lift 10 pounds

10  _____

11         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability
    is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:
15
                  Step one:  Is the claimant engaging in substantial gainful
16         activity?  If so, the claimant is found not disabled.  If not, proceed
           to step two.
17                Step two:  Does the claimant have a "severe" impairment?
           If so, proceed to step three.  If not, then a finding of not disabled is
18         appropriate.
                  Step three:  Does the claimant's impairment or combination
19         of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
           404, Subpt. P, App.1?  If so, the claimant is automatically
20         determined disabled.  If not, proceed to step four.
                  Step four:  Is the claimant capable of performing his past
21         work?  If so, the claimant is not disabled.  If not, proceed to step
           five.
22                Step five:  Does the claimant have the residual functional
           capacity to perform any other work?  If so, the claimant is not
23         disabled.  If not, the claimant is disabled.  _____

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

frequently and 20 pounds occasionally; stand, walk or sit up to six hours in an eight hour

workday; and occasionally climb, stoop, crouch, and never crawl; plaintiff is not precluded from

performing his past relevant work; and plaintiff is not disabled.  Administrative Transcript

("AT") 26.  Plaintiff contends that the ALJ erred by rejecting the medical opinion of plaintiff's

treating physician as well as the consulting physician; the ALJ failed to give credit to plaintiff's

subjective complaints; and the ALJ erred in finding plaintiff was capable of performing his past

relevant work.

II.  Standard of Review

      The court reviews the Commissioner's decision to determine whether (1) it is

based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

Substantial evidence means more than a mere scintilla of evidence, but less than a

preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1    1335, 1338 (9th Cir. 1988).

2    III.  Analysis

3         a.  The ALJ Properly Weighed the Medical Evidence.

4         The weight given to medical opinions depends in part on whether they are

5    proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

6    830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

7    who has a greater opportunity to know and observe the patient as an individual. Id.;  Smolen v.

8    Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

9         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

10   considering its source, the court considers whether (1) contradictory opinions are in the record;

11   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

12   treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

13   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

14   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

15   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

16   examining professional's opinion (supported by different independent clinical findings), the ALJ

17   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

18   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

19   weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

20   F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

21   rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

22   without other evidence, is insufficient to reject the opinion of a treating or examining

23   professional.  Lester, 81 F.3d at 831.

24        The ALJ gave significant weight to the medical opinion of examining physician,

25   Dr. Kumar.  AT 24.  Dr. Kumar opined that plaintiff could perform a full range of light work

26   activity with minimal postural limitations.  Furthermore, Dr. Kumar stated that plaintiff could lift

4

1  20 pounds occasionally; 10 pounds frequently; and that he would not be limited in his ability to

2  stand or walk; could frequently climb, balance, kneel, and stoop; could occasionally crouch; and

3  should avoid crawling.

4       The ALJ also gave significant weight to the consulting opinions of Dr. Havilawala

5  and Dr. Miller.  AT 24.  Dr. Havilawala determined plaintiff was capable of occasionally lifting

6  20 pounds and frequently lifting 10 pounds.  AT 134.  In assessing mobility, Dr. Havilawala

7  stated plaintiff could stand and walk up to six hours in an eight hour workday; could sit six hours

8  in an eight hour workday; and had no limitations in his ability to push or pull.  Id.  Furthermore,

9  Dr. Havilawala stated that plaintiff should only occasionally climb, stoop, or crawl.  AT 135.  Dr.

10  Miller reviewed these conclusions and agreed with them, finding them to be "very well

11  reasoned."  AT 132

12       Both doctors reviewed the medical opinion of Dr. O'Neill, an examining family

13  practice resident who saw plaintiff on July 3, 2002.  According to the ALJ, the consulting doctors

14  determined that Dr. O'Neill's opinion of plaintiff's limitations was overly restrictive.  AT 24.

15  Dr. O'Neill concluded that because of significant back problems, disc degeneration, tremors, and

16  angina, plaintiff could stand and walk less than two hours in an eight hour workday; could sit no

17  more than six hours in an eight hour workday; could only occasionally lift 10 pounds and should

18  avoid frequent lifting of any weight; would be able to only occasionally bend, stoop, and crouch;

19  and would have manipulative limitations in his ability to reach, handle, feel, grasp, and finger.

20       The ALJ did not consider the opinion of plaintiff's treating physician, Dr. Hunt, as

21  evidence of his treatment was not presented to the ALJ.[2]  However, the Appeals Council made

22  Dr. Hunt's reports part of the administrative record.  AT 8, 172-83.  Accordingly, this court will

23  review the ALJ's decision under the substantial evidence standard with due consideration of Dr.

24

25  [2]Despite concluding the hearing on June 9, 2003, the record in this case was held open until at least mid-December.  AT 13.  Plaintiff submitted additional evidence on or about December 16, 2003, AT 168, that the ALJ considered in his opinion, AT 18.  There is no

26  explanation for plaintiff inability to submit to the ALJ the available records of Dr. Hunt.

5

1   Hunt's report.  See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff

2   submitted additional materials to the Appeals Council in requesting review of the ALJ's decision,

3   court may properly consider the additional materials because the Appeals Council addressed

4   them in the context of denying plaintiff's request for review); see also Ramirez v. Shalala, 8 F.3d

5   1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the

6   decision of the ALJ after examining the entire record, including new material, court considers

7   both the ALJ's decision and the additional materials submitted to the Appeals Council).

8            The evidence of Dr. Hunt's treatment includes an initial consultation on August

9   27, 2003, AT 172, lumbar epidural steroid injections on September 9, 2003, and October 1, 2003,

10  and a selective nerve root block on November 26, 2003.  In addition, Dr. Hunt saw plaintiff on

11  March 4, 2004.  AT 182.  At that time, plaintiff informed Dr. Hunt that he was applying for

12  benefits.  Id.  During that visit, Dr. Hunt stated that plaintiff had severe chronic pain that will

13  require continuous treatment and that stabilizing lower back surgery might be possible.  Id.

14           It is difficult to characterize Dr. Hunt's opinion as contradictory to the medical

15  opinions relied upon by the ALJ.  Like all of the other doctors in the record, Dr. Hunt recognized

16  some degeneration in plaintiff's spine and the need for constant care.  Dr. Hunt differed only on

17  the potential result of that degeneration, stating that surgery may be possible in the future.

18           No medical opinion upon which the ALJ relied concluded that plaintiff will not

19  require some ongoing care.  However, unlike other opinions in the record, Dr. Hunt offers no

20  assessment of plaintiff's functional limitations resulting from his need for constant care.  Rather,

21  as stated in his treatment notes, Dr. Hunt's purpose is primarily to increase plaintiff's abilities to

22  perform his daily activities.  AT 177.  This effort to increase activity and the observations made

23  therewith are far removed from other doctors' opinions about plaintiff's current limitations.

24           Furthermore, Dr. Hunt does not conclude plaintiff requires surgery, only

25  speculates that it may be possible in the future.  This speculation is based on no new objective

26  medical evidence and appears nowhere else in the record.  Evidence of the need for surgery may

6

1  be probative of further deterioration, and consequently valuable in any new application for

2  benefits.  Sanchez v. Secretary of HHS, 812 F.2d 509, 512 (9th Cir. 1987).

3           However, given its noncontradictory, limited, and speculative nature, it cannot be

4  stated that Dr. Hunt offers an opinion contrary to that of Dr. Kumar.  As a result, there is nothing

5  by this treating physician to which the ALJ should have shown deference in reaching his

6  findings.  It is apparent that substantial evidence supported the ALJ's weighing of the medical

7  evidence in this case.  Remand for consideration of Dr. Hunt's opinion is not required.

8           Similarly, none of plaintiff's other treating physicians offered an opinion of

9  plaintiff's limitations that the ALJ was able to consider.  At the time of his application, plaintiff

10  was treated by Dr. Gowda.  Dr. Gowda made numerous notes regarding his treatment of plaintiff,

11  but made no assessment of his functional limitations resulting from any of his complaints.  AT

12  129, 131, 142-44, 150-56.   In addition, prior to his application, plaintiff was treated by Dr.

13  Gillum, who also offered no opinion on plaintiff's limitations.  AT 145-148.

14           The only medical opinion favorable to plaintiff was that offered by the examining

15  physican, Dr. O'Neill.  The ALJ did not expressly discredit Dr. O'Neill's opinion, or the opinion

16  of any other physician.  However, plaintiff argues that the ALJ improperly rejected Dr. O'Neill in

17  favor of the opinion of Dr. Kumar, Dr. Havilawala, and Dr. Miller.  Plaintiff's Brief at 8: 9-10.

18  This contention is without merit.

19           The ALJ properly ignored the opinion of one examining physician, Dr. O'Neill, in

20  favor of the opinion of another examining physician, Dr. Kumar.  In discussing the weight that he

21  gave to Dr. Kumar's opinion, the ALJ provided specific and legitimate reasons for his decision.

22  In particular, the ALJ noted the lack of clinical findings that would support a conclusion that

23  plaintiff is disabled and not capable of light work.  AT 24.  Furthermore, the ALJ highlighted the

24  fact that the treating records of Dr. Gowda and Dr. Gillum provide no contradictory medical

25  evidence with which to doubt Dr. Kumar's findings.  Id.  Nor can it be said that the records of

26  Dr. Hunt undermine this conclusion by the ALJ.

1    Clinical findings in this case include a cardiac stress test, AT 149, as well as MRIs

2    of plaintiff's cervical and lumbar spines.  AT 158.  The cardiac stress test was normal.  AT 149.

3    Furthermore, according to Dr. Kumar, plaintiff's spine limitations were consistent with people

4    similar in age to plaintiff who do not suffer any pain symptoms.  AT 161.

5    In addition, Dr. Kumar gave plaintiff a complete, formal physical examination,

6    along with observing his movements and actions during the taking of his medical history and the

7    physical.  AT 158.  Based upon this evaluation, Dr. Kumar determined plaintiff had full range of

8    motion in his cervical spine and limited range of motion in his lumbar spine.  AT 161.  However,

9    according to Dr. Kumar, there was no evidence of radiculopathy, or pain located away from the

10   source of the injury.  Id.  Furthermore, there was no indication of any limitations caused by

11   tremors, angina, or any of the other symptoms about which plaintiff complained.

12   Dr. Kumar also considered plaintiff's medical records during his evaluation.  As

13   the ALJ observed, the records of Dr. Gowda and Dr. Gillum show plaintiff visited his doctors

14   following complaints of chest pain, tremors, GERD and PUD, allergies, nausea, headaches, and

15   back and flank pain.  AT 16.  However, as with plaintiff's chest pain, kidney stones, tremors, and

16   allergies, these records show that many of plaintiff's symptoms either resolved with time,

17   lifestyle changes, or medication.  With regards to plaintiff's back pain, about which plaintiff

18   made no complaints to Dr. Gillum, the ALJ noted that MRIs order by Dr. Gowda found nothing

19   more than mild to moderate spinal impairments.  AT 16, 18-19.  Dr. Gowda prescribed only pain

20   killers for plaintiff's complaints about his back and associated pain and made no

21   recommendations to plaintiff for further treatment, physical therapy, or lifestyle changes.  AT 18.

22   Furthermore, the ALJ noted that the record shows plaintiff went to Dr. Gowda on at least three

23   occasions after his initial complaints without any mention of back pain, AT 154-56, and that his

24   renewed complaints came only after initiation of his disability claim.  AT 18, 151.

25   The record reveals that Dr. Kumar is an diplomate with the American Board of

26   Physican and Rehabilitative Medicine, and the American Board of Pain Medicine.  Id.  In

8

comparison, Dr. O'Neill is a family practice resident, eminently qualified to practice medicine, but presumably less familiar with the intricacies of cases like plaintiff's.  The ALJ's decision to put more weight into the opinion of a specialist was entirely consistent with the regulations.  See 20 C.F.R. § 404.1527(d)(5).

Supporting Dr. Kumar's opinion was the opinion of two nonexamining physicians in the case.  The ALJ's weighing of the opinions of the nonexamining physicians, Dr. Halivawala and Dr. Miller, is proper.  Both physicians reached similar conclusions upon independent examination of the objective medical evidence.

In addition, the ALJ noted that both nonexamining physicians discounted the opinion of Dr. O'Neill because of its apparently excessive reliance on the subjective complaints of the plaintiff.  AT 24.  Credibility determinations do factor into evaluations of medical evidence.  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  As noted below, the ALJ properly discredited plaintiff's subjective complaints of pain.  When there are legitimate reasons to doubt a plaintiff's complaints, the opinions upon which those complaints are based are also questionable.  See Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))).

Two examining physicians provided contradictory opinions in this case.  Ultimately, the ALJ gave more credence to Dr. Kumar's opinion.  The ALJ's reliance on this opinion over the opinion of a less experienced, nonspecialist, was proper and supported by substantial evidence in the record.  The medical evidence, including the clinical findings, the records of all treating physicians, and plaintiff's own complaints, does nothing to cast any doubt upon Dr. Kumar's assessment.  Furthermore, the properly weighted opinions of the nonexamining physicians in this case provide additional support to Dr. Kumar's assessment.  The

9

1  ALJ's consideration of the medical opinions in this case was not in error.

2        b.  The ALJ Properly Credited Plaintiff's Subjective Complaints.

3        The ALJ determines whether a disability applicant is credible, and the court defers

4  to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

5  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

6  an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

7  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

8  supported by "a specific, cogent reason for the disbelief").

9        In evaluating the credibility of subjective complaints, the ALJ should first

10  consider objective medical evidence and then other factors.  Bunnell v. Sullivan, 947 F.2d 341,

11  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

12  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

13  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

14  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

15  testimony; unexplained or inadequately explained failure to seek treatment or to follow a

16  prescribed course of treatment; and the applicant's daily activities.  Smolen v. Chater, 80 F.3d

17  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

18  55406-01; SSR 88-13.  Work records, physician and third party testimony about the nature,

19  severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

20  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

21  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

22  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

23  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

24  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

25  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

26  F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

1   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

2   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

3           The ALJ found plaintiff's statements about his pain and various limitations not

4   fully credible.  In making this determination, the ALJ relied upon the proper legal standard to

5   determine plaintiff's credibility.  The ALJ cited a number of factors that are supported by

6   substantial evidence in the record to reach this conclusion.  The ALJ's determination of

7   plaintiff's credibility was not in error.

8           The ALJ noted that, despite plaintiff's claims of severe pain and limitation, he

9   maintains an active lifestyle.  AT 23.  In his findings, the ALJ recounted that plaintiff testified to

10  helping his wife with chores, doing yard work, driving short distances, using a riding lawn

11  mower, and taking care of his horses.  Id.  Furthermore, the record indicates that plaintiff told Dr.

12  O'Neill that he can sometimes play nine holes of golf.  AT 123.  This level of activity provided

13  evidence to the ALJ that plaintiff's ailments are overstated or controlled by medication.  Id.

14          In addition, according to the ALJ, the lack of medical documentation further

15  undermined plaintiff's claim.  AT 23.  The ALJ found that the low level of medication taken by

16  plaintiff did not support his claim.  Id.  Furthermore, the record showed no evidence of muscle

17  atrophy or wasting common with severe pain.  Id.  Finally, the absence of any definitive medical

18  statement about the severity and unremitting nature of plaintiff's pain, as well as the lack of any

19  physical therapy or other therapeutic courses of treatment, supported the ALJ's credibility

20  determination.  Id.

21          The ALJ also expressed concern about the validity of plaintiff's representations

22  regarding his true name and age.  AT 15.  The ALJ noted the numerous representations plaintiff

23  has made throughout the years regarding his name and birthday, tailoring them to suit his needs

24  at that point in his life.  For example, upon plaintiff's initial application for benefits, he stated

25  that he was born in 1941.  AT 48. However, plaintiff applied for social security cards on at least

26  two occasions claiming that he was born in 1944 and 1947.  AT 62, 63.  While plaintiff's

1   testimony provided some explanation for the various discrepancies, it nonetheless provides a

2   basis upon which the ALJ may properly assess credibility.

3          The factors considered by the ALJ were all valid.  While the records from Dr.

4   Hunt provide some evidence of the nature of plaintiff's pain, as well as treatments undertaken to

5   address it, there remains substantial evidence for the ALJ's credibility determination.  The nature

6   of plaintiff's activities and medical impairments, including direct testimony at his hearing before

7   the ALJ, information contained in his activities questionnaire, AT 78-80, medical records, and

8   questions about his background, provide the substantial evidence necessary to support the ALJ's

9   finding.  The ALJ's credibility determination was based on permissible grounds and will not be

10  disturbed.

11          c.  The ALJ did not Err in Finding Plaintiff Able to Perform his Past Relevant Work.

12          As discussed above, the ALJ properly adopted the opinions of Dr. Kumar, Dr.

13  Havilawala, and Dr. Miller that plaintiff could perform light work.  AT 25.  Light work is defined

14  as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying

15  of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  Jobs in this category require a

16  "good deal of walking or standing, or when it involves sitting most of the time with some

17  pushing and pulling of arm or leg controls."  Id.  There are no postural limitations associated with

18  light work.

19          The ALJ found that plaintiff's past relevant work included duties as a

20  transportation manager, Dictionary of Occupational Titles (DOT) Code No. 222.137-030, with an

21  SVP of six, and general manager, DOT Code No. 559.132-058, also with an SVP of six.  Id.

22  Both positions were found to be essentially consistent with light, skilled work and required

23  lifting no more than 20 pounds.  Id.  The ALJ found that plaintiff could not perform his past

24  relevant work as a truck driver because of the medium exertion required.  AT 24.

25          The DOT and its supplement may be presumptively applied to determine

26  plaintiff's prior work.  Gray v. Heckler, 760 F.2d 369, 372 (9th Cir. 1985).  The ALJ is not

12

1    required to classify plaintiff according to the particulars of his former job, but rather, his former

2    type of work.  Id.; DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983); Jock v. Harris, 651

3    F.2d 133, 135 (2d Cir. 1981).  A plaintiff may overcome the ALJ's presumptive classification by

4    showing that his duties at a particular line of work were not those envisaged by the drafters of the

5    DOT, i.e. that the job was different from what the employer labeled it.  Villa v. Heckler, 797 F.2d

6    794, 798 (9th Cir. 1986); DeLoatche, 715 F.2d at 151.  Alternatively, plaintiff may overcome the

7    presumption by showing that the DOT inaccurately describes the exertional demands of the work

8    in question.  Villa, 797 F.2d at 798.

9              In this case, plaintiff testified that his former jobs frequently required him to lift

10   more than 20 pounds.  AT 193, 94.  In his testimony, plaintiff stated that his job at the lamb

11   processing plant required the lifting of boxes weighing up to 50 pounds.  Id.  He also testified

12   that his job as a general manager at the tire recycling plant required lifting of up to 150 pounds.

13   Id.  The ALJ discredited plaintiff's subjective complaints of pain, but made no general finding

14   that plaintiff was not credible and that his testimony about his prior duties was not be believed.

15   See SSR 82-62 ("[Plaintiff] is the primary source for vocational documentation, and statements

16   by [plaintiff] regarding past relevant work are generally sufficient for determining skill level,

17   exertional demands and nonexertional demands of such work.")

18             Regardless, plaintiff failed to meet his burden that he could not perform his past

19   relevant work.  While the precise description of plaintiff's former duties is scarce, evidence in the

20   record supports the ALJ's determination of the type of work plaintiff formerly performed.

21   Plaintiff former service as a transportation manager at the lamb processing plant is correctly

22   captured at DOT Code No. 222.137-030.  Department of Occupational Titles Code No. 222.137-

23   030 describes shipping and receiving supervisor (clerical), which the State of California Health

24   and Human Services Agency determined to be equivalent to a transportation manager.  AT 95.

25   In addition, plaintiff described himself as general manager for the tire recycling plant, a

26   description upon which the ALJ relied.

1        Plaintiff offered no evidence, other than the description of the requirements at his

2   particular job, to support any inference that all jobs in either of the identified fields required

3   heavy lifting.  There is no evidence in the record that plaintiff's former work was something

4   other than what he described, or that duties in that field were not accurately captured by the DOT.

5   Accordingly, it was not error for the ALJ to find plaintiff could perform his past relevant work.

6        Both jobs identified as past relevant work are rated in the DOT at specific

7   vocational preparation (SVP) level six.  Level six generally requires one to two years training to

8   learn the skills necessary for average performance.  DOT, Appendix B.  The record indicated

9   plaintiff served as general manager for the tire recycler for less than one year.  However, this

10  limited service does not preclude his qualification for a position identified as SVP six.  The SVP

11  necessary for a profession may be acquired through school, on the job training, or experience in

12  other professions.  Id.  For example, four years of college typically equates to two years of SVP.

13  Id.

14       Plaintiff has significant experience in the workforce.  Furthermore, testimony

15  from plaintiff showed he had some college, AT 193, and may have completed up to four years

16  without acquiring a degree.  AT 71.  For the ALJ to determine plaintiff could still perform his

17  past relevant work as a general manager at SVP six was not in error.

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1         The ALJ's decision is fully supported by substantial evidence in the record and

2 based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

3         1.  Plaintiff's motion for summary judgment or remand is denied, and

4         2.  The Commissioner's cross-motion for summary judgment is granted.

5 DATED: May 18, 2006.

6

7                                                             UNITED STATES MAGISTRATE JUDGE

8

9 ggh13

10 Cranston.ss.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26